**WESTERN CONFERENCE OF TEAMSTERS, Plaintiff,**

v.

**William E. BROCK, Secretary, United States Department of Labor, Defendant.**

**Court No. 86–04–00436.**

United States Court of International Trade.

March 1, 1989.

Wilma B. Liebman, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice,

Sheila N. Ziff, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

CARMAN, Judge:

Plaintiff, on behalf of former employees of Great Western Sugar Company (Great Western), seeks reversal on review of a final determination by the Secretary of Labor (Secretary) denying certification of eligibility for benefits under the worker adjustment assistance program of the Trade Act of 1974, tit. II, §§ 221–249, 284, (the Trade Act), 19 U.S.C. §§ 2271–2321, 2395 (1982 and Supp. IV 1986).[1] Plaintiff contests the Secretary's denial of certification for assistance based on the Secretary's finding that increased imports did not contribute importantly to the worker's separation from employment.

After careful consideration of the administrative record, the arguments of the parties, and the legislative history, the Court holds the determination by the Secretary of Labor is not supported by substantial evidence in the record and is not in accordance with law. The case is remanded to the Secretary for further consideration in accordance with this opinion.

## BACKGROUND

Between May 21, 1985 and July 25, 1985, eight local unions affiliated with plaintiff, Western Conference of Teamsters (Teamsters), filed nine petitions for certification of eligibility to apply for adjustment assistance. The petitions were filed on behalf of current and former non-clerical employees of Great Western,[2] who had been affected by the discontinuance of operations at Great Western's plants and its filing for bankruptcy, on March 7, 1985, under Chapter 11 of the Federal Bankruptcy Code.

Pursuant to section 221(a) of the Trade Act, 19 U.S.C. § 2271(a), the Office of Trade Adjustment Assistance (OTAA) of the Department of Labor[3] consolidated the petitions and instituted an investigation of the allegations which culminated in a recommendation to the Secretary. R. 132, 157. On the basis of the OTAA recommendation, the Secretary, by his delegate,[4] issued a negative determination of eligibility for adjustment assistance. 50 Fed.Reg. 42,788 (1985). The Teamsters filed an application for reconsideration which was granted on December 24, 1985. 51 Fed. Reg. 1,312 (1986). On January 27, 1986, the certifying officer issued a Notice of Negative Determination on Reconsideration. 51 Fed.Reg. 4,443 (1986); R. 248–51.

The Teamsters then instituted this action to review the final determination of the Secretary of Labor denying certification of eligibility for adjustment assistance in accordance with section 284 of the Trade Act, 19 U.S.C. § 2395. Plaintiff contended the Secretary's determination, that increased imports of a product like or directly competitive with that produced by Great Western did not contribute importantly to its workers' separation from employment, was unsupported by substantial evidence in the record and not in accordance with law. Brief in Support of Plaintiff's Motion for Judgment Upon Agency Record, at 1–2 (hereinafter "Plaintiff's Brief"). Thereafter, the Secretary moved for an order remanding the case to the Department of

---

1. The Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, §§ 1421–30, 102 Stat. 1107, 1242–44 (1988) renumbered 19 U.S.C. § 2272 as § 2272(a) and added § 2272(b) relating to the eligibility of oil and gas workers to apply for adjustment assistance benefits. *See*, § 1421(a)(1) at 102 Stat. 1242–43.

2. The petitions covered workers at the following locations: Loveland, Colorado; Denver, Colorado; Fort Morgan, Colorado; Sterling, Colorado; Goodland, Kansas; Greeley, Colorado; Bayard, Nebraska; Ovid, Colorado; and Billings, Montana. Administrative Record documents 1–16 (hereinafter "R.").

3. The Office of Trade Adjustment Assistance of the Department of Labor has been delegated the responsibility for investigating adjustment assistance eligibility. 29 C.F.R. § 90.2 (1985).

4. The Secretary of Labor has delegated to a "certifying officer" the responsibility of making determinations and issuing certifications of eligibility to apply for adjustment assistance. 29 C.F.R. § 90.2 (1985). Hereinafter references to the "Secretary" include actions by his delegate.

Labor for further investigation and redetermination. This Court granted the motion for remand on February 13, 1987.

Upon further investigation the Secretary issued a Notice of Negative Determination on Remand on March 12, 1987. 52 Fed. Reg. 8,120 (1987). However, on April 8, 1987, the Secretary moved for a second remand in order to rectify its failure to include supplemental statements and evidence submitted by the Teamsters in the record, as ordered by this Court upon its original remand, and to allow a redetermination by the Secretary in light of the amended supplemental record. The Court granted the second remand motion on April 22, 1987 and the Secretary issued the Notice of Negative Determination on Second Remand on May 5, 1987. 52 Fed.Reg. 17,343 (1987).

The Teamsters raise the following contentions in support of their argument that the agency denial of certification for adjustment assistance was arbitrary, capricious and not in accordance with law:

1. The Secretary failed to consider the adverse effects of increased imports of raw as opposed to refined sugar because he erroneously determined that as a matter of law "raw sugar was not competitive with refined sugar for the Great Western Sugar Company." (Plaintiff's Supplemental Brief in Support of Plaintiff's Motion for Judgment Upon Agency Record at 14, hereinafter "Plaintiff's Supplemental Brief.")

2. The Secretary failed to consider the adverse impact of raw sugar imports on the price and supply of domestic sugar beets and refined sugar, or the resulting effect on Great Western's profitability. *Id.* at 17.

3. The Secretary did not consider, or adequately explain in the record, the reason for his departure from the analysis in his prior certification of Great Western workers at the Longmont, Colorado plant. 42 Fed.Reg. 43,154 (1977).

## DISCUSSION

Great Western, a subsidiary of Hunt International Resources Corporation, was one of the nation's leading processors of sugar beets, with twelve plants in five states. Great Western produced refined sugar from sugar beets under contract with the growers. The sugar produced at the various Great Western facilities was marketed primarily to soft drink producers and food manufacturers. In March of 1985, at the end of the 1984–85 growing season, Great Western ceased all operations and that month filed for protection from creditors under Chapter 11 of the federal bankruptcy laws. R. 148, 232.

Virtually all commercial sugar is produced from either sugar cane or sugar beets. Sugar beets are annual temperate zone plants, usually grown in rotation with other crops. Sugar cane is a perennial subtropical plant. Unlike sugar beets which are converted directly into refined sugar, sugar cane is first milled to produce an intermediate product, raw sugar. The refined sugar derived from sugar cane is indistinguishable from that derived from sugar beets—both are almost chemically pure sucrose. R. 134.

The record shows that raw sugar imports increased absolutely or relatively in three of the four years immediately prior to Great Western's bankruptcy in March of 1985.[5] Raw sugar imports increased 11.8 percent 1980 to 1981, 8.2 percent from 1982 to 1983, and an estimated 11.4 percent from 1983 to 1984. Relative to U.S. consumption, imports increased 1.3 percent from 1980 to 1981, 2.7 percent from 1982 to 1983, an estimated 1.8 percent from 1983 to 1984, and, based on first quarter estimates, 1.2 percent from 1984 to 1985. Relative to U.S. production, imports increased 3.9 percent from 1980 to 1981, 6 percent from 1982 to 1983, an estimated 4.3 percent from 1983 to 1984, and 3.2 percent from 1984 to 1985 based on first quarter estimates. From 1981 to 1982 raw sugar imports decreased 41.5 percent in absolute terms, 11.4

5. The term "increased imports" is defined in 29 C.F.R. § 90.2 (1986) to mean that "imports have increased either absolutely or relatively...."

percent relative to U.S. consumption, and 29.2 percent relative to U.S. production. R. 137, 143.[6]

■ Section 284 of the Trade Act empowers this Court to review a negative determination by the Secretary of Labor denying certification of eligibility for adjustment assistance to assure that the determination is supported by substantial evidence and is in accordance with law. 19 U.S.C. § 2395(c); *see, Woodrum v. Donovan,* 5 CIT 191, 193, 564 F.Supp. 826, 828 (1983), *aff'd sub nom. Woodrum v. United States,* 2 Fed.Cir. (T) 82, 737 F.2d 1575 (1984). The findings of fact by the Secretary are conclusive if supported by substantial evidence. 19 U.S.C. § 2395(b). Additionally, "the rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union v. Marshall,* 584 F.2d 390, 396 n. 26 (D.C.Cir.1978). Due to the remedial nature of the trade adjustment assistance program "the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers." *Stidham v. U.S. Dept. of Labor,* — CIT —, —, 669 F.Supp. 432, 435 (1987) (and citations therein). Section 223 of the Trade Act requires the Secretary, upon reaching a determination of a certification petition to "publish a summary of the determination in the Federal Register together with his reasons for making such a determination." 19 U.S.C. § 2273(c). Well-established principles of administrative law mandate that the agency "delineate and make explicit the basis for its conclusions, by articulating a rational connection between the facts found and the discretionary action taken." *SCM Corp. v. United States,* 84 Cust.Ct. 227, 243, C.R.D. 80–2, 487 F.Supp. 96, 108 (1980). Failure by the agency to articulate, in the record, the rational basis underlying the exercise of its discretionary authority precludes a reviewing court from determining if the agency action was in accordance

with the statute, legislative intent and not arbitrary and capricious. *Id.*

Directly Competitive

The Teamsters contend the Secretary erred as a matter of law in its determination that raw sugar was not directly competitive with refined sugar for purposes of determining worker eligibility for relief under the Trade Act. Section 222 of the Trade Act requires the Secretary to certify a group of workers as eligible to apply for trade adjustment assistance benefits if it is determined:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

For purposes of paragraph (3), the term "contributed importantly" means a cause which is important, but not necessarily more important than any other cause. Trade Act § 222, 19 U.S.C. § 2272.

The Secretary's original notice of negative determination of eligibility for worker adjustment benefits was based upon the Department's conclusion that the criterion of paragraph three (3) above was not satisfied. 50 Fed.Reg. 42,788 (1985). The Secretary concluded that there were no increased imports of a product like or directly competitive with the refined sugar produced by Great Western, that contributed importantly to the separation of Great Western's workers from employment and to its absolute decline in sales or production, within the meaning of 19 U.S.C. § 2272(3). Labor's conclusion was based on a survey of Great Western's major cus-

---

**6.** These figures are calculated from Table 1 at R.   143.

tomers, examining their imports of refined sugar and high fructose corn syrup.[7] The determination stated:

> Imports of refined sugar are negligible. Imports were less than one percent in relation to domestic production in recent years.
>
> The closing of facilities covered by this investigation was attributable to a corporate level decision by Great Western Sugar Company to discontinue sugarbeet processing at all of its plants....
>
> Since Great Western's total refined sugar sales declined in the growing year ended March 1985, the Department conducted a survey of its major customers....
>
> The survey revealed that the predominant portion of Great Western's major customers, comprised mainly of food and soft drink manufacturers, did not purchase imported refined sugar or high fructose corn syrup. None of the surveyed customers increased their imports of these products. Several customers stated that increasing use of high fructose corn syrup led to their reduction in purchases from Great Western, but that the syrup was purchased from domestic suppliers.

R. 162–163.

Upon reconsideration of the original denial of certification eligibility, the Teamsters pressed the argument that the Secretary erred by failing to consider increased imports of raw as opposed to refined sugar. Rejecting this claim, the Secretary's Negative Determination on Reconsideration stated:

> Virtually all raw sugar entering the U.S. is raw cane sugar. *Because raw cane sugar requires further processing before it can be marketed as refined sugar, it is not like or directly competitive with refined sugar.* Therefore, raw cane sugar cannot be included with refined sugar for establishing import levels. On reconsideration, the Department learned that the subject facilities of

Great Western could not convert raw cane sugar into refined sugar without extensive capitalization. Further, none of the facilities had the capability in the time period applicable to the petition to convert raw cane sugar into refined sugar. Therefore, raw cane sugar imports would not have an absolute adverse effect on sales and or production of refined sugar and on worker separations at the above mentioned facilities of Great Western Sugar.

51 Fed.Reg. at 4,443.

Plaintiff's motion for judgment upon the agency record before this Court reasserted the arguments it raised before the Secretary in its motion for reconsideration. Teamsters claimed that the Secretary's determination was not supported by substantial evidence in the record and was not in accordance with law. The Teamsters argued against the Secretary's position on reconsideration that "[b]ecause raw cane sugar requires further processing before it can be marketed as refined sugar, it is not like or directly competitive with refined sugar," and claimed it was "squarely at odds" with the statute and its legislative history. Plaintiff's Brief at 11–12.

Apparently persuaded by the soundness of the Teamsters' arguments, the Secretary filed its first motion to have the case remanded to the Department of Labor because the Department had "concluded that raw cane sugar is like or directly competitive with refined beet sugar." Defendant's Motion to Remand at 2. Additionally, the agency's motion requested a remand "so that the agency [could] investigate the effect of increased imports of raw cane sugar and the Secretary [could] determine whether they contributed importantly to Great Western's decline in sales or production and to its workers' separation from employment." *Id.*

This Court granted the Secretary's motion to remand and ordered the Department of Labor, *inter alia,* to: (1) investigate the "effect of increased imports of raw cane sugar" on the workers and plants in issue,

---

**7.** High fructose corn syrup has become increasingly used as a sweetener substitute for refined sugar in many industry applications. R. 134.

and issue a redetermination of eligibility for certification; and, (2) allow the Teamsters to "submit a supplemental statement of position and additional evidence, to the Secretary of Labor ... supporting its contention that increased imports of sugar, including raw cane sugar, contributed importantly to the absolute decline in Great Western's sales and production and to its workers' separation from employment."

Labor conducted a further investigation by telephone and mail of Great Western's major customers to determine their purchases of raw sugar during the period of investigation. Thereafter, the certifying officer reaffirmed the denial on reconsideration of eligibility of the former workers of Great Western to apply for adjustment assistance. 52 Fed.Reg. at 8,121. The denial on remand stated:

> Virtually all raw sugar entering the U.S. is raw cane sugar. *Because raw cane sugar requires further processing before it can be marketed as refined sugar, it is not like or directly competitive with refined sugar for establishing import levels.* On initial reconsideration, the Department learned that the subject facilities of Great Western could not convert raw cane sugar into refined sugar without extensive capitalization. Further, none of the facilities, which were sugar beet refineries, had the capability in the time period applicable to the petition to convert raw cane sugar into refined sugar. Therefore, raw cane sugar imports would not have an absolute adverse effect on sales and/or production of refined sugar and on worker separations at the above mentioned facilities of Great Western Sugar.

52 Fed.Reg. at 8,121.[8]

The Notice of Denial upon Second Remand states that the Department surveyed Great Western's customers to determine if an imported article (raw sugar) was directly competitive with a domestic article (refined sugar) at a later stage of processing. The surveys showed that the respondents "indicated that they do not use raw sugar as a substitute for refined sugar." 52 Fed. Reg. at 17,343 (Negative Determination on Second Remand). On that basis, the Secretary concluded that "[t]he survey showed that raw sugar was not competitive with refined sugar for the Great Western Sugar Company." *Id.* Additionally, the notice of denial stated the Department found "nothing substantive" in the union's submissions to "form a basis for certification." *Id.*[9]

It appears at this point that the Department has rescinded its acquiescence in the Teamsters' claim that, as a matter of law, raw cane sugar is directly competitive with refined sugar for the purposes of the Trade Act. As a consequence that issue is still pending before the Court.

The Teamsters now argue that Labor's conclusion that "raw sugar was not competitive with refined sugar for the Great Western Sugar Company," for the purposes of determining eligibility for trade assistance, contravenes the clear legislative intent of Sections 222(3) and 601(5) of the Trade Act, which together define "directly competitive." Plaintiff's Supplemental Brief at 14–15; 19 U.S.C. § 2272 and 2481(5). The Secretary does not directly respond to this claim, but instead raises the argument that the record establishes the increased imports of raw sugar did not meet the "contributed importantly" test of Section 222(3) of the Act.

Reading Section 222(3) in conjunction with Section 601(5), as the Court must, the

---

**8.** This paragraph is virtually identical to the one in the Secretary's denial on reconsideration. *See,* 51 Fed.Reg. at 4,443. The only changes are the addition of several explanatory words.

**9.** Unfortunately, the Department of Labor's redetermination on first remand, denying eligibility for certification for worker adjustment benefits, was made without the benefit of the union's supplemental statement or additional evidentiary submissions, in contravention of this Court's remand Order. According to the Secretary, "the documents were inadvertently omitted from the supplemental record and were not considered in the redetermination." Defendant's Second Motion For Remand at 2. Consequently defendant again moved for a remand to Labor for a redetermination. *Id.* This Court again remanded the case to Labor for a redetermination in light of plaintiff's submissions. On May 5, 1987, the Secretary again reaffirmed the original denial of eligibility. 52 Fed.Reg. at 17,343.

Court concludes that the Secretary misapplied the term "directly competitive" under the Act by failing to inquire whether the "economic effect" of the increased [10] importation of raw sugar was "comparable" to the effect the increased importation of refined sugar would have had on Great Western. Consequently, the Secretary's conclusion, that imports of raw sugar did not contribute importantly to Great Western's termination of operations, was premature. Before the Secretary could determine whether increased imports contributed importantly to the decline of Great Western's operations, the Secretary had to first determine whether raw sugar was "directly competitive" with the refined sugar Great Western produced.[11]

Section 222 of the Act states that the "Secretary shall certify a group of workers as eligible to apply for adjustment assistance ... if he determines ... that increases of imports of articles like or directly competitive with articles produced by such workers' firm ... contributed importantly to such total or partial separation ... and to such decline in sales or production."

To determine whether an imported article is "directly competitive with" a domestic article, the Department must apply section 601(5) of the Act which defines the term.[12] The section reads as follows:

(5) An imported article is "directly competitive with" a domestic article at an earlier or later stage of processing, and a domestic article is "directly competitive with" an imported article at an earlier or later stage of processing, *if the importation of the article has an economic effect on producers of the domestic article comparable to the effect of importation of articles in the same stage of processing as the domestic article.* For the purposes of this paragraph, the unprocessed article is at an earlier stage of processing.

19 U.S.C. § 2481(5) (emphasis added).

As this Court has noted, "while an agency's interpretation of a statute it administers is entitled to deference if reasonable and not in conflict with legislative intent, no deference is entitled to an interpretation that is plainly inconsistent with the express language of the statute, its purpose, and the legislative intent." *Chaparral Steel Co. v. United States,* — CIT —, —, 698 F.Supp. 254, 259 (1988), *appeal docketed,* Misc. Nos. 231, 232 (Fed.Cir. Feb. 10, 1989 (citing *Board of Governors, Federal Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986)). An examination of the legislative history of Section 601(5) supports Plaintiff's contention that the Secretary erred in his determination that raw cane sugar is not like or directly competitive with refined sugar from sugar beets for the purposes of the Trade Act.

The phrase "like or directly competitive with" originated in the Trade Agreements Extension Act of 1951, where it served as a criterion for invoking escape-clause protection. *See, United Shoe Workers v. Bedell,* 506 F.2d 174, 183 (D.C.Cir.1974); *United Rubber, Cork, Linoleum, Etc. v. Donovan,* 652 F.2d 702, 706 n. 8 (7th Cir.1981). At the time, the Tariff Commission interpreted the phrase narrowly, and held an imported glace cherry (cooked and sugar coated) was not like or directly competitive with a domestic sweet cherry. *See, United Shoe Workers,* 506 F.2d at 185 (*citing Glace Cherries, Report On The Escape Clause Intervention,* Tariff Comm'n Rep. No. 185 (1952)). In 1962, when Congress learned of the Tariff Commission's restrictive ap-

---

**10.** Apparently, neither party disputes that imports of raw sugar increased, by some measure, over the period of the determination.

**11.** Apparently the Department of Labor followed this procedure in its prior proceeding concerning Great Western workers in the Longmont, Colorado plant when confronted with the identical issue, and came to the conclusion plaintiff urges. 42 Fed.Reg. at 12,496. However, the Department's failure to explain in the record its reasons for departing from the analysis it followed in the prior case leaves the Court incapable of determining if the Agency acted within its lawful discretion. *See infra.*

**12.** Neither party in this case has raised, and the Court does not address, the claim that raw sugar produced from sugar cane and refined sugar produced from sugar beets are "like" articles within the meaning of 19 U.S.C. § 2272.

proach, it redefined "directly competitive" to specifically include items in different stages of processing. *United Shoe Workers,* 506 F.2d at 186; *Morristown Magnavox Former Employees v. Marshall,* 671 F.2d 194, 198 (6th Cir.), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 458, 74 L.Ed.2d 610 (1982).

The House Report concerning the 1962 amendment to the Trade Expansion Act which defined "directly competitive" states:

> Your committee has incorporated in the bill a provision which has the effect of permitting an extension of the scope of the term 'directly competitive'. Under this provision, an imported article may be considered 'directly competitive with' a domestic article, or vice versa, *if the one is at an earlier or later stage of processing than the other,* or if one is a processed and the other an unprocessed form of the same article, *and if the economic effect of importation of the imported article is comparable to the effect of importation of articles in the same stage of processing as the domestic article.*
>
> The term 'earlier or later stage of processing' contemplates that the article remains substantially the same during such stages of processing, and is not wholly transformed into a different article. Thus, for example, zinc oxide would be zinc ore in a later stage of processing, since it can be processed directly from zinc ore. For the same reason, a raw cherry would be a glace cherry in an earlier stage of processing, and the same is true of a live lamb and dressed lamb meat. . . .

H.R.Rep. No. 1818, 87th Cong., 2nd Sess. 24 (1962) (emphasis added).

As the foregoing makes clear, articles in different stages of processing need not be interchangeable in order to be directly competitive.[13] Nor must it be shown that the imported article has deprived the domestic article of any part of its market share. The statutory test is economic: Articles in different stages of processing are directly competitive if the economic effect of importation is the same as if the articles were in the same stage of processing.

Here, neither party disputes that raw cane sugar is refined cane sugar in an earlier stage of processing. Nor do the parties dispute that Great Western was in the business of producing refined sugar from sugar beets. Since the record establishes that refined sugar from sugar cane is commercially and economically indistinguishable from refined sugar produced from sugar beets, raw sugar is refined sugar in an earlier stage of processing, regardless of whether the refined sugar was produced from sugar cane or sugar beets.[14] Consequently, the Department should have determined if the *economic effect* of importation of raw sugar (imported article) is comparable to the effect of the importation of refined sugar (domestic article) in accordance with the Congressional intent underlying 19 U.S.C. § 2481(5). If the Department concludes the effects are comparable, then the articles are "directly competitive" for the purposes of determining certification for eligibility for adjustment assistance under 19 U.S.C. § 2272(3).

In reaching his determination that raw sugar was not directly competitive with refined sugar the Secretary surveyed Great Western's customers regarding their purchases of raw sugar and high fructose corn syrup from 1983 through the first four months of 1985. On the basis of those

---

**13.** *See, Morristown Magnavox Former Employees,* at 198 (" 'directly competitive' articles are those which, although not substantially identical in their inherent or intrinsic characteristics, are substantially equivalent for commercial purposes, that is, are adapted to the same uses and are essentially interchangeable therefor.")

**14.** The Court of Appeals for the District of Columbia, in *United Shoe Workers,* 506 F.2d at 185–86, determined that Congress intended this common sense conclusion when it amended the Trade Expansion Act to include consideration of articles in different stages of processing. "From daily experiences . . . we know that many products can be directly competitive without having identical or nearly identical physical characteristics. Normally, the term 'directly competitive' invites . . . a comparison of commercial uses of the products and not their characteristics."

data, the Secretary determined that "[t]he few customers who imported raw cane sugar ... do not use raw sugar (foreign or domestic) as a substitute for refined sugar and reported that they would have continued to purchase refined sugar from Great Western, had Great Western remained in operation." 52 Fed.Reg. at 8,121 (Denial on Remand). As shown above, the proper inquiry mandated by the statute is not whether the products were substitutable, nor is it whether Great Western's customers would have continued to purchase refined sugar from Great Western, but whether the *economic effect* of the importation of raw sugar was comparable to the effect the importation of refined sugar would have on Great Western.[15]

As an alternative basis for finding a lack of direct competitiveness between raw and refined sugar, the Department examined Great Western's plants and concluded:

> Great Western could not convert raw cane sugar into refined sugar without extensive capitalization ... [and] none of the facilities, which were sugar beet refineries, had the capability in the time period applicable to the petition to convert raw cane sugar into refined sugar. Therefore, raw cane sugar imports would not have an absolute adverse effect on sales and/or production of refined sugar and on worker separations at the above mentioned facilities of Great Western Sugar.

52 Fed.Reg. at 8,121 (Denial on Remand). Again, since for purposes of the Section 222 of the Trade Act, raw cane sugar is refined sugar in an earlier stage of processing, it is immaterial whether the products could be used interchangeably in Great Western's production facilities. The premise that Great Western could not effortlessly insinuate raw sugar into its production processes does not logically yield the Secretary's conclusion that raw sugar imports "would not have an absolute adverse effect" on Great Western. Under the statute the conclusion must be sup-

ported by an inquiry into the *economic effect* of the increased imports, not mere conjecture.

Prior Certification and Examination of Price

■ The last two arguments the Teamsters proffer are essentially different components of the same contention for the purposes of this case. First, the Teamsters contend the Secretary failed to consider the adverse impact of raw sugar imports on the price and supply of domestic sugar beets and refined sugar. Second, they contend the Secretary did not adequately explain in the record the rationale underlying his departure from his prior analysis under section 222 of the Trade Act in his certification of eligibility for adjustment assistance in 1977 at certain Great Western plants. In the prior case it appears the Secretary, in administering section 222, analyzed the relationship between increased imports of raw sugar, depressed domestic sugar prices and the resultant adverse economic effect on the profitable operation of two of Great Western's beet sugar refineries. In the case at bar the Secretary, in essence, denies the legitimacy of that analysis. Hence, the central issue here is whether the Secretary's failure to explain the reasons underlying this departure from prior practice was arbitrary and capricious and not in accordance with law.

In 1977 the Secretary granted certification eligibility to workers from its Longmont, Colorado plant which had been closed by Great Western. At that time the Secretary stated:

> Profitable operation of the domestic sugar beet industry is dependent upon numerous factors, including production costs, yield of the sugar beet harvest, and prices of crops substitutable for sugar beets. However, *the single most important determinate of profitable operation is the price of sugar. Depressed sugar prices resulting from increased imports made continued operation of*

---

**15.** One circuit court has suggested that the legislative history of the Trade Act of 1974, when viewed in conjunction with its predecessor the Trade Expansion Act of 1962, appears to show that Congress intended the Department of Labor to examine only national import figures under this section. *United Rubber, Cork, Linoleum, Etc.,* 652 F.2d at 706 n. 8.

*Great Western's Longmont plant economically unfeasible.*

42 Fed.Reg. at 43,154–55 (1977) (Longmont, Colorado, Certification) (emphasis added).

In the pending case, the Secretary argues that "neither prices nor profitability are relevant for determining group eligibility under 19 U.S.C. § 2272. They are not causes which directly contributed importantly to the decline in Great Western's sales or production or to the workers' separation from employment for purposes of the trade adjustment statute." Defendant's Response in Opposition To Plaintiff's Motion For Judgment Upon Agency Record at 30 (hereinafter "Defendant's Brief"). To support this contention, the Secretary refers to the Denial on Second Remand which stated that:

the Department found that commodity specialists aver that the profitability of firms in the beet sugar industry depends on (1) the efficiency of the sugar beet refineries and (2) the U.S. price support system for growers. Accordingly, in 1984 the world price for raw sugar was 5.18¢ per pound; the New York spot price for raw sugar was 21.74¢ per pound. The U.S. price support system for sugar seems to be the more determinant factor in the price of raw sugar. Also, beet sugar prices vary by regions depending on location and transportation differentials. In any event neither prices nor profitability are criteria for worker group certification.

52 Fed.Reg. at 17,343. In 1977 the Secretary determined that prices and profitability were legitimate factors for consideration under section 222(3) of the statute. In the case at bar plaintiff raised the argument that increased imports of raw sugar contributed importantly to depressed sugar prices, which in turn created economically unfeasible operating conditions, resulting in Great Western being driven out of business. This legal argument appears to be essentially identical to the position adopted by the Secretary in the 1977 certification.

The only time the Secretary attempted to elucidate in the record the underlying rationale for his changed interpretation of the statute was in the Notice of Negative Determination on Reconsideration. The Notice stated:

[P]rior certifications in 1978 [sic] at Great Western Sugar Company (Johnston and Longmont, Colorado, TA–W–1636) have no bearing on the instant cases since those decisions were made in an earlier time period when sales and/or production and import data were different. Further, the consumption of HFCS for industrial useage [sic] was much smaller in 1978 [sic].

51 Fed.Reg. at 4,443.

The Teamsters contend that to determine the economic effect of increased raw sugar imports on refined sugar, the effect of those imports on the price of refined sugar must be taken into account. They assert that "the price of raw sugar is the single most important determinant of profitable operation of the domestic sugar beet industry." Further, the Teamsters contend this allegation is virtually a direct quote from the earlier certification at Great Western's Longmont, Colorado plant. Plaintiff's Supplemental Brief at 17. In response the Secretary found that "[t]he U.S. price support system for sugar seems to be the more determinant factor in the price of raw sugar. Also, beet sugar prices vary by regions depending on location and transportation differentials," and states that in any event, "neither prices nor profitability are criteria for worker group certification," under the statute. 52 Fed.Reg. at 17,343–44 (Second Remand); Defendant's Brief at 30.

■ It is well established that this Court must give substantial weight to the Secretary's interpretation of a statute he is charged with administering as long as it is sufficiently reasonable. *See, Bunker Ltd. Partnership v. Brock,* —— CIT ——, ——, 687 F.Supp. 644, 646 (1988); *Kelley v. Secretary, U.S. Dep't of Labor,* —— Fed.Cir. (T) ——, 812 F.2d 1378, 1380 (Fed.Cir.1987). It is equally true that an "administrative agency must either follow its existing precedents or provide a reasonable explanation for its deviation or noncompliance." *ILWU Local 142 v. Donovan,* 9 CIT 620, 625 (1985), *reh'g denied,* 10 CIT 161 (*citing*

*Secretary of Agriculture v. United States,* 347 U.S. 645, 653, 74 S.Ct. 826, 831, 98 L.Ed. 1015 (1954)). While it is axiomatic that the prior determination factually concerned different production and import data, that cannot suffice to explain the adoption of the Secretary's changed legal interpretation.

The legislative history of Section 222(3) of the Trade Act, "clearly indicates that any separation resulting from a factor other than import penetration ... does not warrant certification." *Estate of Finkel v. Donovan,* 9 CIT 374, 383, 614 F.Supp. 1245, 1252 (1985). It is also clear that the Trade Act "was not intended to provide trade adjustment assistance to all workers who lose their jobs due in some way to imports." *Former Employees of Asarco's Amarillo Copper Refinery v. United States,* — CIT —, 675 F.Supp. 647 (1987). The legislative histories of section 222 and its predecessor the Trade Expansion Act, also show that Congress intended the Secretary to engage in a broad examination of economic factors in determining whether there was a "causal nexus" between imports and layoffs or plant closings under section 222(3). *See, Morristown Magnavox Former Employees,* 671 F.2d at 197–98; *Bunker Ltd. Partnership,* — CIT at —, 687 F.Supp. at 647–48; *Estate of Finkel,* 9 CIT at 382, 614 F.Supp. at 1251–52.[16]

Based on these considerations, the Court cannot say that the Secretary's interpretation of section 222(3) of the Trade Act was sufficiently reasonable. The Secretary recognized in his 1977 determination concerning Great Western workers that prices and profitability could be relevant to a determination of the economic effect of imports on an aggrieved domestic industry. He has taken the contrary position here while arguing at the same time that profitability of the beet sugar industry depends on differ-

ent factors (i.e., U.S. price support and refinery efficiency). The Court finds that there is not sufficient evidence in the record to support the Secretary's finding that "[t]he U.S. price support system seems to be the more determinant factor in the price of raw sugar." 52 Fed.Reg. at 17,-343–44 (Second Remand Notice). This finding was apparently based upon a telephone conference with a commodity specialist on sugar at the International Trade Commission. R. B–1. There seems to be nothing else in the record to otherwise support this conclusion. Further, these data do not examine or address the Teamsters' claim that "the price of *refined sugar* is largely determined by the price of raw sugar." Reply Brief In Support Of Plaintiff's Motion For Judgment Upon Agency Record at 6. Since the Secretary failed to adequately explain the basis underlying his changed interpretation of the statute, this Court holds the determination by the Secretary is not supported by substantial evidence in the record and is not in accordance with law. This Court concludes the Secretary's decision lacks the "reasoned analysis" required by law. *See, International Union,* 584 F.2d at 396 n. 26.

## CONCLUSION

In light of the foregoing, the Court concludes the Secretary erred as a matter of law in:

(1) failing to determine whether the economic effect of increased imports of raw sugar was comparable to the effects of the importation of refined sugar for the purpose of determining whether they were "directly competitive" under 19 U.S.C. §§ 2272(3) and 2481(5); and

(2) in failing to adequately explain or distinguish in the record the rationale underlying his departure from his analysis in his prior certification of Great Western workers at the Longmont, Colo-

---

**16.** In *Former Employees of Asarco's Amarillo Copper Refinery,* — CIT —, 675 F.Supp. 647 (1987), the Court upheld the Secretary's interpretation that section 222(2) does not require Labor to consider the "value" of sales in order to determine whether "sales or production, or both of such firm or subdivision have decreased absolutely." Apparently, no Court has considered whether a decrease in the "value" of the petitioning firm's sales, as measured by price differentials, must be considered by the Secretary under section 222(3) and the "contributed importantly" test.

rado plant in 1977 which considered the adverse impact of raw sugar imports on the price and supply of domestic refined sugar produced from sugar beets.

This case is remanded to the Department of Labor with the direction to apply the "directly competitive" test consistent with the directions outlined in this opinion. In its overall consideration of the issues presented to it on remand, the Department is specifically instructed to explain the reasons underlying its changed interpretation of section 222(3) which now holds that price and profitability are not relevant factors for examination in determining whether increased imports contributed importantly to the termination of production at petitioning workers' plants.[17] This case is remanded to the Department of Labor to conduct a new determination in accordance with this opinion.

## ORDER

Upon reading and filing plaintiff's motion for judgment upon the agency record, defendant's response in opposition thereto, and upon all other papers and proceedings herein, it is hereby

ORDERED that the matter be remanded to the Department of Labor for redetermination; and it is further

ORDERED that in making its redetermination, the Department of Labor shall apply the statutory test as outlined in the opinion herein to determine whether raw sugar was directly competitive with refined sugar for Great Western Sugar Company workers; and it is further

ORDERED that in its overall consideration of the issues presented to it on remand the Secretary shall fully explain the reasons for its current interpretation of section 222(3) that price and profitability are not relevant factors for examination in determining whether increased imports contributed importantly to the termination of production at plaintiff's plants, and the reasons for its departure from its prior interpretation of this section; and it is further

ORDERED that Labor shall issue a redetermination and file such redetermination together with any supplemental record with this Court within 45 days from the date of this order.

SO ORDERED.

---

17. *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (reviewing court may require additional explanation of reasons for agency decision).