**FORMER EMPLOYEES OF STATE MANUFACTURING COMPANY, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 92–06–00414 (BN).**

United States Court of International Trade.

Oct. 21, 1993.

Dewey Ballantine, Michael H. Stein and Lizbeth R. Levinson, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Patricia L. Petty, and Michele Curran, U.S. Dept. of Labor, Washington, DC, for defendant.

## OPINION AND ORDER

NEWMAN, Senior Judge:

### Introduction

Plaintiffs, former employees of State Manufacturing Company located in New Philadelphia, Pennsylvania ("State"), contest the decision of the Department of Labor, Office of Trade Adjustment Assistance ("Labor"), denying plaintiffs' petition for certification of eligibility for trade adjustment assistance benefits. 57 Fed.Reg. 14,434 (April 20, 1992); 57 Fed.Reg. 19,993 (May 8, 1992) (petition for reconsideration of negative determination denied). This action, initiated by a letter complaint dated June 18, 1992, is before the court pursuant to 19 U.S.C. § 2395 and 28 U.S.C. § 1581(d)(1) granting this court exclusive jurisdiction to review any final determination of Labor under section 223 of the Trade Act of 1974 (19 U.S.C. § 2273) respecting the eligibility of workers for adjustment assistance under the Act.

Plaintiffs move, in conformance with CIT Rule 56.1, for a judgment on the administrative record contending that the negative determination of Labor is unsupported by substantial evidence, that Labor's determination should be reversed, and that this case be remanded to Labor for further investigation.

Defendant opposes the motion and requests that Labor's determination be affirmed and that the court enter a judgment dismissing the action. The issue presented is whether Labor's negative determination, based on a 1990–91 investigation limited to State's production of Army Dress coats for the Department of Defense ("Defense"), is supported by substantial evidence on the administrative record.

### Background

Plaintiffs' former employer State was a subsidiary of Target Sportswear, New York, New York ("Target"), and from 1954 to 1989 was a producer of civilian men's wearing apparel. However, according to Labor's investigation, commencing in 1989 and until October 1991 State's business comprised solely the production of army dress coats for Defense. When its military contract was completed in October 1991, State resumed production of civilian wearing apparel for approximately six months. However, a new Defense contract was not forthcoming and Target closed State's facilities early in 1992, separating 150 workers from employment.

Plaintiffs are the 150 former employees of State who filed a petition with Labor for trade adjustment assistance dated January 28, 1992. In a second petition dated February 14, 1992, the articles produced by plaintiffs were described as military green army coats and men's tailored clothing and the petition attributed State's decline in sales and production to "[n]o military contract" (R. 6).

Labor commenced an investigation of plaintiffs' eligibility for trade adjustment assistance on February 24, 1992, which investigation covered 1990 and 1991. The investigation included a telephone communication with the personnel director of State and with Defense, and information received from Target. Information collected by Labor from Defense revealed that the Department was required by law to purchase domestically manufactured Army dress coats, and therefore there was no competition from imports for the Army dress coats produced for Defense by State. Labor conducted no trade and industry analysis since it would not be

representative of the product produced by State during the period of the investigation. Labor, concededly, made no investigation regarding the effect of increased imports on State's production and sales of civilian men's clothing prior to or following the three year period during which State produced exclusively for Defense.

When investigating a petition for certification of eligibility for trade adjustment assistance, Labor must determine whether the group of workers meets the adjustment assistance eligibility requirements set forth in 19 U.S.C. § 2272. Based on Labor's 1990–91 investigation, Labor determined on April 7, 1992 that plaintiffs did not meet the adjustment assistance eligibility requirements set forth in 19 U.S.C. § 2272(a)(3) that there be "increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof [which] contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production." In that regard, Labor observed that "[t]he Defense Appropriation Act requires the U.S. military to buy Army dress coats to be purchased and produced in the United States" (Adm.Rec.Doc. 14 at 24).

Plaintiffs, through a letter dated April 17, 1992 from the Amalgamated Clothing and Textile Workers Union, requested reconsideration of Labor's negative determination on plaintiff's eligibility for trade adjustment assistance. Thus, plaintiffs stressed that Labor failed to consider that State had produced men's tailored clothing for the private market for approximately six months following completion of the Defense contract, from October 1991 through April 1992. Further, plaintiffs submitted a letter dated April 23, 1992, pointing up that State had been a producer of civilian clothing for 34 years and had produced military uniform dress coats for only 3 years. Upon reconsideration, Labor adhered to its initial negative determination, commenting on May 1, 1992 (Adm.Rec. 34):

> Investigation findings show that State Manufacturing produced only Army dress coats for the Defense Department from 1989 to October 1991, when the contract was completed. Since October 1991, State

produced some incidental men's clothing for the private market. This incidental work was a stop-gap measure while they [sic] [State] waited for another defense contract. When no other defense contracts were forthcoming, State closed its plant. Since the production of men's clothing for the private market was less than one year, there was no period in which to compare State's production or sales.

### Discussion

■ The scope and standard of review in the instant case is prescribed by 28 U.S.C. § 2640(c) and 19 U.S.C. § 2395. Hence, judicial review is on the administrative record and Labor's findings of fact, if supported by substantial evidence, are conclusive. "Substantial evidence" has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Local 116 v. U.S. Secretary of Labor,* 793 F.Supp. 1094, at 1096 (1992), *citing Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The court has carefully reviewed the administrative record, the briefs of counsel and agrees with the Government that Labor's negative determination is supported by substantial evidence and is in accordance with the law. Labor determined that plaintiffs were not eligible for trade adjustment assistance since they failed to meet the requirements of § 2272(a)(3) "that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production."

The gravamen of plaintiffs' complaint is that Labor's focus on the 1990–91 period in this case resulted, unfairly, in totally ignoring State's production and sales of civilian production, allegedly for 34 years—from 1958 to 1992. Accordingly, argues plaintiffs: "[t]he Department should have examined [State's] sales and production of men's apparel and the effect of increased imports of like products thereupon, within the context of the company's 34 year history of civilian production. Instead, the Department improperly

focused solely on a single contract for the production of Army dress coats" (pl's brief 7). Plaintiffs further maintain that State's production and sales of men's wearing apparel, its historical and principal business, was adversely impacted by increased imports of wearing apparel; and that following completion of the Defense contract, such imports ultimately and importantly contributed to the closing of State's plant and separation of the plaintiff workers from their employment. Plaintiffs have additionally alleged that Target closed State's plant so that the parent company could outsource more of its production to foreign factories. Accordingly, plaintiffs complain that Labor's investigation period of 1990–91, limited to army dress coats, was inadequate in time-frame and scope, and therefore its negative determination is unsupported by substantial evidence.

Defendant, on the other hand, proffers that Labor's investigation shows that State manufactured exclusively for the military for a period from 1989 to October 1991, during which period plaintiffs remained fully employed; that following completion of the Defense contract in October 1991, State's production of men's civilian wearing apparel for six months was incidental stop-gap business pending a new Defense contract; when no new defense contract was forthcoming, State's plant was closed; and that plaintiff's separation was caused by the termination of the Defense contract with no new Defense contract forthcoming—in the words of plaintiffs' second petition, "No military contract." Labor also observed that since the production of men's clothing for the private market after termination of its defense contract was for less than a year, there was no period in which to compare State's production or sales. Based on the foregoing, defendant insists that Labor's investigatory scope and time-frame were adequate for purposes of the statute and, consequently, Labor's negative determination is supported by substantial evidence.

■ The nature and extent of the investigation are within the discretion of Labor, but must be adequate to obtain the necessary information upon which to make a determination and meets a threshold requirement of reasonable inquiry. *Woodrum v. Donovan*, 4 CIT 46, 51, 544 F.Supp. 202, 206 (1982), *aff'd*, 737 F.2d 1575 (Fed.Cir.1984); *Estate of Finkel v. Donovan*, 614 F.Supp. 1245, 1250 (CIT 1985); *Former Employees of Hewlett–Packard Co. v. United States*, Slip Op. 93–177 (September 9, 1993), at 10, 1993 WL 366972. Under all the facts and circumstances the court finds that Labor's investigation was reasonable and in compliance with the statute, and that there is substantial evidence on the record to support Labor's findings. Predicated on its investigation, Labor could reasonably conclude that increased imports of civilian men's wearing apparel did not contribute importantly to the separation of plaintiffs from their employment, which would require a negative determination on plaintiffs' petition.

Even assuming that prior to 1989 State's sales or production of men's apparel decreased in response to increases in imports, the imports would not have contributed importantly to the separation of plaintiffs, as required by 19 U.S.C. § 2272(a)(3), because plaintiffs remained fully employed by State for at least another three years. Therefore, the court agrees with defendant's contention that under all the facts and circumstances plaintiffs were separated because no new Defense work was forthcoming at State and increased imports were, at best, a remote and *de minimis* cause of plaintiff's separation and not an important contributing cause, as required by the statute. *See Estate of Finkel*, 614 F.Supp. at 1251–52; *Former Employees of Hewlett–Packard Co.*, Slip Op. 93–177 at 11–14.

Accordingly, plaintiffs' motion for judgment upon the administrative record is denied, Labor's negative determination regarding plaintiffs' eligibility for trade adjustment assistance is affirmed and this action is dismissed.