**Slip Op. 99-96**

# UNITED STATES COURT OF INTERNATIONAL TRADE

FORMER EMPLOYEES OF KLEINERTS, INC.,

              Plaintiffs,

       v.

ALEXIS HERMAN, UNITED STATES
SECRETARY OF LABOR,

            Defendant.

BEFORE: Pogue, Judge

Court No. 98-05-01438

**Public Version**

[Defendant Labor Department's negative determination on remand is sustained.]

Decided: September 14, 1999

Roger E. Naghash for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Henry R. Felix, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Of counsel, Marilyn W. Zola, Office of the Solicitor, U.S. Department of Labor, for Defendant.

## OPINION

**POGUE, Judge:** This matter is before the Court on Former Employees of Kleinerts, Inc.'s ("Plaintiffs") motion for judgment on the agency record pursuant to USCIT Rule 56.1. Plaintiffs

challenge the Secretary of Labor's ("Labor") remand determination that Plaintiffs are not eligible for certification for trade adjustment assistance because increased imports did not contribute importantly to the workers' separation from employment within the meaning of Section 222 of the Trade Act of 1974.  See 19 U.S.C. § 2272(a)(3)(1994).  This Court has jurisdiction pursuant to 19 U.S.C. § 2395(c)(1994) and 28 U.S.C. § 1581(d)(1)(1994).

## Background

The purpose of the trade adjustment assistance program is "to offer unemployment compensation, training, job search and relocation allowances, and other employment services to workers who lose their jobs because of import competition."  Former Employees of Parallel Corp. v. United States Secretary of Labor, 14 CIT 114, 118, 731 F. Supp. 524, 527 (1990).

In order to certify a group of workers as eligible to apply for trade adjustment assistance, Labor must determine:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or

> partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a).

In order to receive trade adjustment assistance benefits, Plaintiffs must satisfy all three requirements of 19 U.S.C. § 2272(a).  See, e.g., Former Employees of Bass Enter. Prod. Co. v. United States, 13 CIT 68, 70, 706 F. Supp. 897, 900 (1989); Abbott v. Donovan, 8 CIT 237, 239, 596 F. Supp. 472, 474 (1984).

On February 6, 1998, Kleinerts Inc. of Alabama ("Kleinerts"), a garment manufacturing company, closed its plant in Greenville, Alabama.  As a result of the closing, Kleinerts terminated the Plaintiffs' employment.  See Petition Screening and Verification, Conf. Rec. at 2.  In anticipation of the closing of the Greenville plant, Plaintiffs, pursuant to 19 U.S.C. § 2271(a) (1994), filed a petition for certification of eligibility to apply for adjustment assistance on January 31, 1998.  In their petition, Plaintiffs described the products manufactured at Greenville as "T-shirts" and "sweatshirts."[1]  See Petition for Trade Adjustment Assistance, Jan. 31, 1998, Conf. Rec. at 1.

In response to the petition, Labor began an investigation of whether Plaintiffs were eligible to apply for adjustment

---

[1]The sweatshirts are more specifically described in the record as fleece separates or fleece tops.  Henceforth, the Court will refer to the sweatshirts as "fleece tops."

assistance.  On February 17, 1998, Labor sent a questionnaire to Bud Daniels, Director of Personnel at Kleinerts, inquiring: (1) about the organizational structure of Kleinerts Inc. and its Greenville plant; (2) about the company's sales, production, and employment; (3) about the company's imports; (4) whether the company transferred production to an offshore location; and (5) about its existing primary customers.  See Feb. 17, 1998, Fax from Kleinerts, Conf. Rec. at 7-8.

In response, Mr. Daniels asserted that "Greenville is a satellite sewing plant of Kleinerts Inc. of Alabama[, which] is a wholly owned subsidiary of Kleinerts Inc." Id. at 7.  In addition, Mr. Daniels identified the main products manufactured by the Greenville plant as "T-shirts" and "fleece tops." See id.  Mr. Daniels further reported that neither Kleinerts nor its affiliates imported products competitive with those produced at the Greenville plant.  See id.  Mr. Daniels also noted that the Greenville plant layoffs occurred as a result of transferring production to the company's Elba, Alabama, facility, not to an offshore location.  See id. at 8.  Finally, Mr. Daniels indicated that the Greenville plant had one primary "declining" customer ("Primary Customer"), and that Primary Customer only purchased T-shirts from the Greenville facility.[2]  See id.

---

[2]"Declining customers" refer to customers of the subject firm whose purchases of the reviewed product(s) have decreased

In addition, Labor, in accord with its general practice, surveyed the Greenville plant's customers to determine whether the "contributed importantly" test was satisfied. On February 24, 1998, Labor sent a letter to the human resources department of Primary Customer, requesting that it report the total quantities of its domestic and foreign purchases of T-shirts similar to or like those produced by the Greenville plant. See Feb. 24, 1998, Letter from Labor, Conf. Rec. at 11. In response, Primary Customer asserted that it did not purchase imports and that its contract with Kleinerts ended because Kleinerts elected to discontinue the business relationship. See Mar. 12, 1998, Fax from Primary Customer, Conf. Rec. at 14.

Based on the information obtained from Kleinerts and Primary Customer, Labor concluded on March 19, 1998, that the reasons for Plaintiffs' dislocation from Kleinerts' Greenville plant did not satisfy the third requirement of the statutory test for group eligibility: that imports contribute importantly to the workers' separation. See Negative Determ. Regarding Eligibility, Mar. 19, 1998, Conf. Rec. at 18-19. Accordingly, Labor denied Plaintiffs' petition for trade adjustment assistance. See id.

On March 27, 1998, Plaintiffs requested reconsideration of Labor's negative determination. See Mar. 27, 1998, Letter from

significantly during the investigation period.

Plaintiffs, Conf. Rec. at 24. Plaintiffs' request reiterated that the Greenville plant produced fleece tops in addition to T-shirts. See id. Moreover, Plaintiffs alleged that Kleinerts transferred equipment from the Greenville plant to Honduras for the purpose of shifting fleece top production to Honduras. See id.

On April 15, 1998, Labor adhered to its denial of Plaintiffs' petition based on the following findings: (1) that Primary Customer reported no imports of T-shirts like those produced by the Greenville plant in 1996 and 1997, and (2) that the shift of machines from Greenville, Alabama, to Honduras did not form a basis for worker group certification. See Negative Determ. Regarding Application for Reconsideration, Apr. 15, 1998, Conf. Rec. at 27. Labor did not comment regarding the production of fleece tops at the Greenville plant. See id. at 26-28.

Plaintiffs challenged Labor's negative determination in this Court on June 1, 1998. On July 13, 1998, Labor requested a voluntary remand to conduct further investigation. This Court granted Labor's request.

Consequently, Labor asked for additional information from Kleinerts regarding: (1) the production of T-shirts and fleece tops at the Greenville plant during 1996 and 1997; (2) its contract with Primary Customer; (3) the transfer of equipment from the Greenville plant to Honduras; and (4) its production of fleece tops for a secondary customer ("Secondary Customer"). See July 7,

1998, Letter from Labor, Conf. Rec. at 30.

Again reporting on behalf of Kleinerts, Mr. Daniels responded that there was a decline in T-shirt production at Kleinerts' Greenville plant and an overall sales decline of fleece tops for the company as a whole.  See July 20, 1998, Fax from Kleinerts, Conf. Rec. at 32.  Moreover, Mr. Daniels asserted that fleece top production at the Greenville plant was a "fill-in" mechanism established to keep the Greenville plant open while negotiations for a new contract with Primary Customer were taking place.  See id.; see also Mem. Regarding Telephone Conversation with Bud Daniels, Apr. 15, 1998, Conf. Rec. at 25.  Finally, Mr. Daniels asserted that the equipment shipped from Greenville to Honduras was to be used for products different from those manufactured at the Greenville plant, and that Kleinerts was not using any foreign contractors to produce T-shirts or fleece tops.  See id.

Labor continued its remand investigation by requesting from Secondary Customer the respective quantities of its fleece top purchases from (1) Kleinerts, (2) all domestic sources, and (3) foreign sources.  See Aug. 6, 1998, Letter from Labor, Conf. Rec. at 39.  Secondary Customer's representative responded that it purchased 975,000 units of fleece tops from Kleinerts in 1996 and 960,000 units in 1997.  In addition, Secondary Customer reported 45,000 units of fleece top imports in 1997 alone.  See Aug. 12, 1998, Fax from Secondary Customer, Conf. Rec. at 41.

Upon completing its investigation on remand, Labor again denied Plaintiffs' eligibility. <u>See</u> Negative Determ. on Reconsideration on Remand, Sept. 9, 1998, Conf. Rec. at 42-43. Labor based its third negative determination on the following findings: (1) Primary Customer reported no imports of like or directly competitive articles; (2) "[S]econdary [C]ustomer, which was used as [a] production fill-in at the [Greenville] facility, reported imports of less than six percent of like or directly competitive articles to those made by the [Greenville] facility[;]" and (3) Kleinerts did not use the transferred equipment to manufacture products like or directly competitive to those formerly produced at the Greenville plant. <u>Id.</u> at 43. Thus, on voluntary remand, Labor again concluded that imports did not contribute importantly to the workers' separation and declining sales within the meaning of 19 U.S.C. § 2272(a)(3).

## Standard of Review

The Court must sustain a decision by Labor to deny certification of eligibility for trade assistance benefits if it is in accordance with law and supported by substantial evidence in the administrative record. <u>See</u> 19 U.S.C. § 2395(b) (1994); <u>see also</u> <u>Abbott</u>, 8 CIT at 239, 596 F. Supp. at 474. "The Court decides an adjustment assistance case based on the administrative record before it." <u>See</u> <u>Int'l Union v. Reich</u>, 22 CIT ___, ___, 20

F. Supp.2d. 1288, 1292 (1998). The Court may, however, if "good cause" is shown, remand a case to Labor for the consideration of additional evidence. See 19 U.S.C. § 2395(b). Thus, although Labor has considerable discretion in conducting its trade adjustment assistance investigations, "where Labor conducts an inadequate investigation by failing to make a reasonable inquiry, the court has good cause to remand the case to Labor to take further evidence." Former Employees of Komatsu Dresser v. United States Secretary of Labor, 16 CIT 300, 303 (1992)(citing Former Employees of Hawkins Oil and Gas, Inc. v. United States Secretary of Labor, 15 CIT 653, 656 (1991)).

**Discussion**

In the present case, Labor contends that Plaintiffs failed to demonstrate that increasing imports "contributed importantly" to their separation within the meaning of 19 U.S.C. § 2272(a)(3). "Contributed importantly" refers to the "direct and substantial relationship between increased imports and a decline in sales and production." See Estate of Finkel v. Donovan, 9 CIT 374, 382, 614 F. Supp. 1245, 1251 (1985). In its review of eligibility status, Labor may certify workers for trade adjustment assistance only if it finds "an important causal nexus" between increased imports and the workers' dislocation. Id. "[A]n important aspect of the

'contributed importantly' test is whether the subject company's customers shifted their purchases to imports."    United Steelworkers of America v. Secretary of Labor, 17 CIT 773, 774-75 (1993).[3]

According to the Senate Report to the Trade Reform Act of 1974, while a "cause may have contributed importantly even though it contributed less than another single cause[, it still] must be significantly more than *de minimis* to have contributed importantly[.]"  S. Rep. No. 93-1298, 93rd Cong., 2nd Sess. at 133 (1974).   In this regard, the Senate report further notes the following:

> [Labor] may find that imports were at such a level that, under ordinary circumstances, they would have been an important factor in causing total or partial separations of a group of workers and in the decline in sales or production, but that another cause was so dominant that the separations and decline in sales or production would have been essentially the same irrespective of the influence of the import increase. In such a case, [Labor] would not find that increased imports had "contributed importantly."

Id.

---

[3]Here, Labor "employ[ed] what is known as the 'dual test': Did customers reduce purchases from the subject company and increase purchases of imports?" United Steelworkers, 17 CIT at 775 n.4.  Although the Court recognizes that this is "not a very sophisticated test," it is a reasonable means of ascertaining a causal link between imports and worker separations. See Estate of Finkel, 9 CIT at 381, 614 F. Supp. at 1250.

Here, the issue is whether there is substantial evidence to support Labor's conclusion that imports of articles like or directly competitive with those produced by the Greenville plant did not contribute importantly to the plant's decline in sales or production, and thus, to Plaintiffs' separation from employment. During the period of investigation, 1996 to 1997, the Greenville plant produced both T-shirts and fleece tops.  <u>See</u> Feb. 17, 1998, Fax from Kleinerts, Conf. Rec. at 7.

In its remand determination, Labor found that the Greenville plant's decline in production was primarily due to Kleinerts' failure to continue business with Primary Customer.  <u>See</u> Negative Determ. on Reconsideration on Remand, Sept. 9, 1998, Conf. Rec. at 43.  Labor concluded that: (1) Primary Customer did not import T-shirts, but rather had transferred its purchases to another domestic manufacturer; (2) that imports of fleece tops purchased by Secondary Customer did not contribute importantly to the workers' separation; and (3) that no evidence suggested that equipment transferred from the Greenville plant to Honduras was used for production of like or directly competitive products.  <u>See</u> Def.'s Br. at 11.

Plaintiffs allege that Labor failed to meet the threshold of reasonable inquiry in its investigation for three reasons.  First,

Plaintiffs claim that Labor failed to verify responses from its customer surveys.  See Pl.'s Br. at 4, 6. Second, Plaintiffs contend that Labor inadequately examined whether equipment transferred from the Greenville plant to Honduras was used to manufacture products similar or directly competitive to those previously produced at the Greenville plant.  See Pl.'s Br. at 6. Third, Plaintiffs argue that Labor failed to include in its inquiry all of the customers who purchased T-shirts and fleece tops from the Greenville plant within the period of investigation. See Pl.'s Br. at 6-7.[4]

---

[4]Plaintiffs provide in their amended brief additional, nonrecord evidence to demonstrate that imports "contributed importantly" to their separation.  See Pl.'s Am. Br., Exhibit E. The evidence is a document from the Alabama Department of Economic and Community Affairs.  The document contains a statement made by the Greenville plant manager, Don Wilson, to the Alabama department on December 7, 1997, indicating that the Greenville plant had been losing business to import competition. See id.  Plaintiffs maintain that Mr. Wilson's statements conflict with Bud Daniels' assertions that imports did not contribute importantly to the Greenville workers' separation. See Pl.'s Reply Br. at 5-6.  Additionally, Plaintiffs claim that Labor's failure to examine Wilson's statement shows that Labor's investigation fell below the threshold of reasonable inquiry. See id. at 6.
    Labor's failure to examine the above evidence, however, is not indicative of an inadequate investigation.  The court has remanded for good cause where the agency's investigation "'is so marred that [Labor's] finding is arbitrary or of such a nature that it could not be based on substantial evidence.'"  Local 116 v. U.S. Dep't of Labor, 16 CIT 490, 492, 793 F. Supp. 1094, 1096 (1992)(citations omitted).  Here, the additional evidence

## A. Primary Customer: T-shirt Manufacturing

Regarding whether T-shirt imports contributed importantly to Plaintiffs' separation, both parties agree that the record demonstrates that the reduction in T-shirt production at the Greenville plant was caused by the termination of Kleinerts' business relationship with Primary Customer. See Mar. 27, 1998, Letter from Plaintiffs, Conf. Rec. at 24; Negative Determ. on Reconsideration on Remand, Sept. 9, 1998, Conf. Rec. at 43.

Labor's conclusion that T-shirt imports did not contribute importantly to the cause of the separation of the Greenville workers is supported by substantial evidence. In 1996, while the Greenville plant was fulfilling the Primary Customer contract, the plant produced 127,704 actual dozens[5] of T-shirts. See July 20, 1998, Fax from Kleinerts, Conf. Rec. at 32. In 1997, while Kleinerts was attempting to renegotiate its contract with Primary Customer, the Greenville plant produced only 35,865 actual dozens

Plaintiffs point to is merely a conclusory statement that does not by itself indicate a factual discrepancy in the record. Therefore, the Court declines to find that Labor's failure to include the Alabama report in the administrative record indicates that its investigation was "marred," such that the Court must remand for the obtaining of further evidence.

[5]The unit of measurement used in Secondary Customer's response to the survey is "unit." The production data supplied by Kleinerts, however, is given in "actual dozens." The Court assumes that an actual dozen equals twelve units.

of T-shirts.  See id.  Thus, the record evidence supports the conclusion that the termination of Kleinerts' business relationship with Primary Customer caused the decline in T-shirt production at the Greenville plant.

Moreover, Primary Customer reported that it did not purchase imports of products like or directly competitive with the T-shirts produced at the Greenville plant.  If domestic factors cause the decline in sales or production then imports have not contributed importantly to the separation of workers.  See Estate of Finkel, 9 CIT at 383, 614 F. Supp. at 1252; see also S. Rep No. 93-1298, 93rd Cong., 2nd Sess. at 133.  Therefore, substantial evidence supports Labor's conclusion that T-shirt imports did not contribute importantly to the workers' separation.

Plaintiffs contend, however, that, in conducting its analysis, Labor did not meet the reasonable inquiry threshold because Labor based much of its investigation on an unsigned questionnaire response from Kleinerts.  See Pl.'s Br. at 4.; see also Feb. 17, 1998, Fax from Kleinerts, Conf. Rec. at 9. Plaintiffs further claim that upon receipt of the questionnaire, Labor made no attempts to verify the information obtained and that responses were "inaccurate."  See Pl.'s Br. at 4.

This court has recognized, however, that "[u]nverified

statements from company officials in a position to know about their company's products and business decisions can be relied upon when there is no other evidence in the record to contradict or cast doubt upon those statements." Int'l Union, 22 CIT at ___, 20 F. Supp.2d at 1297 n.15 (citations omitted).  Here, there are no factual discrepancies in the record to conflict with the responses given by Kleinerts.  Therefore, the Court sustains Labor's conclusion that imports of T-shirts did not contribute importantly to the separation of Plaintiffs as supported by substantial evidence in the record.

## B. Secondary Customer: Fleece Top Production

The Senate Report to the Trade Reform Act of 1974 explains that a "cause may have contributed importantly even though it contributed less than another single cause." S. Rep. No. 93-1298, 93rd Cong., 2nd Sess. at 133 (1974).  Therefore, because the Greenville plant also produced fleece tops, the conclusion that T-shirt imports did not contribute importantly to the closing of the Greenville plant does not necessarily preclude a finding that fleece top imports did contribute importantly.

In conducting its voluntary remand investigation, Labor pursued this line of inquiry by reviewing the Greenville plant's

production of fleece tops and the quantity of fleece top purchases by Secondary Customer. See Aug. 6, 1998, Letter from Labor, Conf. Rec. at 39. Thus, the nature of Labor's remand investigation implies that Labor considered whether fleece top imports may have contributed importantly to the closing of the Greenville plant.

Labor concluded, however, that imports of fleece tops did not contribute importantly to the closing of the Greenville plant. See Negative Determ. on Reconsideration on Remand, Sept. 9, 1998, Conf. Rec. at 43. Labor based its conclusion on two main findings: (1) that the production of fleece tops at the Greenville plant was used as a "production fill-in" while negotiations for a new contract with Primary Customer were underway; and (2) that Secondary Customer's imports of fleece tops were "less than six percent of like or directly competitive articles to those made by the [Greenville] facility." Id.

According to Kleinerts, the company shifted some of its fleece top production from its Elba, Alabama, plant to Greenville to provide the Greenville employees with substitute work while negotiations for a new contract with Primary Customer were underway. See July 20, 1998, Fax from Kleinerts, Conf. Rec. at 32. When Kleinerts failed to reach a new agreement with Primary Customer, it shut down the Greenville plant. In Former Employees

of State Mfg. Co. v. United States, 17 CIT 1144, 1147-48, 835 F. Supp. 642, 645 (1993), this court held that it was reasonable for Labor to conclude that imports of men's clothing did not contribute importantly to the workers' dislocation where the company's production of men's clothing was "incidental stop-gap business pending a new [and unrelated] contract[.]" The court in Former Employees agreed with Labor that the company's failure to conclude the new contract was the cause of the workers' separation, not import competition. See Former Employees, 17 CIT at 1147-48, 835 F. Supp. at 645.

Here, Greenville output data provides support for Labor's finding that Kleinerts shifted fleece top production from its Elba, Alabama, plant to Greenville during the renegotiation of the contract with Primary Customer. Between 1996 and 1997, Greenville's production of fleece tops increased by 31,428 actual dozens, while Elba's production of fleece tops decreased by a similar amount, 30,447. See July 20, 1998, Fax from Kleinerts, Conf. Rec. at 33-34.

In addition, Labor based its conclusion that fleece top production at Greenville was incidental on Mr. Daniels' unverified statements indicating that,

[W]orkers at Greenville, Alabama plant did sew

sweatshirts at the beginning of 1997 for a 4 to 5 week period of time. The production was sent from the Elba plant to avoid layoffs and keep the workers busy while the [Primary Customer] contract for the sewing of t-shirts was under negotiation.

Mem. Regarding Telephone Conversation with Bud Daniels, Apr. 15, 1998, Conf. Rec. at 25.

Mr. Daniels' statement, however, is not supported by the production data provided by Kleinerts.  Daniels claims that Kleinerts used the Greenville plant for filler fleece top production for a four to five week period in 1997.  See id. Kleinerts' production data, however, indicate that the Greenville plant produced 31,757 fleece tops in 1996, prior to the negotiations with Primary Customer.[6]  See July 20, 1998, Fax from Kleinerts, Conf. Rec. at 32.  Labor's failure to verify Mr. Daniels' statements in the face of factual discrepancies in the record indicates that it should not have relied on them.  Cf. Int'l Union, 22 CIT at _____, 20 F. Supp.2d at 1297 n.15 ("Unverified statements from company officials . . . can be relied upon when there is no other evidence in the record to contradict or cast doubt upon those statements.").

---

[6]Relatively, the Greenville plant's fleece top production accounted for approximately twenty percent of its total output in 1996.

Whether or not the production of fleece tops at the Greenville plant was a production fill-in, however, is not material in this case because Labor's conclusion that Secondary Customer's imports of fleece tops represented less than six percent of the total quantity purchased from the Greenville plant is supported by substantial evidence. See Negative Determ. on Reconsideration on Remand, Sept. 9, 1998, Conf. Rec. at 43.

Responding to Labor's questionnaire, Secondary Customer reported no imports of fleece tops in 1996 and 45,000 units of fleece top imports in 1997. See Aug. 12, 1998, Fax from Secondary Customer, Conf. Rec. at 41. The record indicates that the Greenville plant produced 758,220 units of fleece tops in 1997. See July 20, 1998, Fax from Kleinerts, Conf. Rec. at 33. Because 45,000 is slightly less than six percent of 758,220, Labor's finding is supported by substantial evidence.

The legislative history explains that "[a] cause must be significantly more than *de minimis* to have contributed importantly," without further defining the term. S. Rep. No. 93-1298, 93rd Cong., 2d Sess. (1974). In this case, the Court finds that it was reasonable for Labor to conclude that fleece top import competition amounting to less than six percent of the Greenville plant's production of fleece tops was not

"significantly more than *de minimis*."   Therefore, the Court sustains Labor's conclusion that increasing imports of fleece tops did not contribute importantly to Plaintiffs' separation because it is in accordance with law and supported by substantial evidence.

## C. Transfer of Equipment from Greenville to Honduras

Labor contends that "[n]one of the equipment which was shipped offshore is being used to produce other products like or directly competitive with those manufactured at the Greenville facility."  Negative Determ. on Reconsideration on Remand, Sept. 9, 1998, Conf. Rec. at 43.   Labor based its conclusion on the supplemental questionnaire response of Mr. Daniels, asserting that the equipment transferred to Honduras from Greenville was "for use in other products."  July 20, 1998, Fax from Kleinerts, Conf. Rec. at 32.   Moreover, Mr. Daniels explained that "Kleinerts Inc. is not nor are we using any contractors to produce T-shirts or Fleece Top Separates at any off-shore location."  Id.

Plaintiffs allege that Labor's inquiry regarding this question was unreasonable because Labor did not verify what products Kleinerts would produce at the overseas plant in order to consider whether such products were like or directly

competitive with those formerly produced at the Greenville plant. <u>See</u> Pl.s' Br. at 5.

As noted, the court has recognized that unverified statements of company officials may be relied upon in the absence of contradictory information.  <u>See</u> <u>Int'l Union</u>, 22 CIT at ___, 20 F. Supp.2d at 1297 n.15.  Here, the record does not demonstrate any factual discrepancies.  Rather, Mr. Daniels' answers are consistent with his earlier responses that Kleinerts did not import T-shirts or fleece tops in 1996 and 1997 and had no intention to import any products like or directly competitive with the products formerly produced at Greenville.  Thus, Labor's conclusion that Kleinerts' transfer of equipment from the Greenville plant to Honduras did not contribute importantly to Plaintiffs' separation is supported by substantial evidence.

## Conclusion

The Court sustains Labor's determination on remand not to certify Plaintiffs as eligible to apply for trade adjustment assistance because that determination was in accordance with law and supported by substantial evidence.  Accordingly, Plaintiffs' motion for judgment on the agency record is denied, and the action is dismissed.  Judgment will be entered accordingly.

_____
Donald C. Pogue
Judge

Dated:   September 14, 1999
         New York, NY