**Slip Op. 03-129**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| FORMER EMPLOYEES OF OXFORD AUTOMOTIVE U.A.W. LOCAL 2088, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Court No. 01-00453 |
| v. | : | **Public Version** |
| | : | |
| UNITED STATES DEPARTMENT OF LABOR | : | |
| | : | |
| Defendant. | : | |

[Labor's NAFTA-TAA determination remanded.]

Dated:  October 2, 2003

Serko & Simon, LLP (Jerome Leonard Hanifin and Joel K. Simon) for plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Delfa Castillo); Jayant Reddy, Office of the Solicitor, Division of Employment & Training Legal Services, United States Department of Labor, Attorney, for defendant.

**OPINION**

**RESTANI, Judge:**

This matter is before the court on Plaintiffs' Second Motion for Judgment on the Agency Record pursuant to USCIT Rule 56.1. Plaintiffs, former employees of Oxford Automotive U.A.W. Local 2088 ("Plaintiffs"), challenge the United States Department of Labor's ("Labor") negative determination in Notice of Negative Determination on Reconsideration on Remand, 67 Fed. Reg. 70,464 (Dep't Labor 2002) [hereinafter Second Remand Determination] (denying Plaintiffs' certification of eligibility for North American Free Trade Agreement-Transitional Adjustment Assistance ("NAFTA-TAA")).[1] Plaintiffs contend that Labor's determination is contrary to law and not supported by substantial evidence in the administrative record. Accordingly, Plaintiffs seek to set aside this determination and obtain a court order requiring Labor to certify Plaintiffs as eligible for NAFTA-TAA benefits. In the alternative, Plaintiffs request a third remand to Labor to conduct a thorough and complete investigation of Plaintiffs' request for NAFTA-TAA benefits.

**JURISDICTION & STANDARD OF REVIEW**

The court has jurisdiction pursuant to 19 U.S.C. § 2395(a) (2000). The court will uphold Labor's determination of eligibility for NAFTA-TAA benefits if it is supported by substantial evidence in the record and is otherwise in accordance with the law. Woodrum v. Donovan, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), aff'd, 737 F.2d 1575 (Fed. Cir. 1984). The court may remand Labor's determination "for good cause shown," if the investigation was "so marred

---

[1] Plaintiffs also contest Labor's previous determinations. See infra Factual and Procedural History; Pls.' Mot. for J. on Agency R. at 2 ("Pls.' First Mot.").

that [its] finding was arbitrary, or that it was not based upon substantial evidence." 19 U.S.C. § 2395(b); Estate of Finkel v. Donovan, 9 CIT 374, 381, 614 F. Supp. 1245, 1250 (1985).

## FACTUAL AND PROCEDURAL HISTORY

Oxford Automotive, Inc. ("Oxford") is a global supplier of metal components, assemblies, mechanisms, and modules used by original equipment automotive manufacturers, or Oxford's customers ("customers"). See Oxford's Form 10-K at 2 ("Form 10-K").[2] Oxford's primary products are "assemblies containing multiple stamped parts, forgings, various . . . components and locking and release mechanisms." Id.

In May 2000, Oxford began production in Ramos Arizpe, Mexico ("Mexico facility"), a "metal stamping and manufacturing center." Id. at 15. In June 2000, Oxford's Argos, Indiana location ("Argos facility") began laying off workers, and layoffs continued until the facility closed in June 2001. PAR1 at 28.[3] Labor claims that layoffs were attributable to the Argos facility's primary customer ceasing production,[4] while Plaintiffs contend layoffs were due to Oxford's decision to transfer an 180-inch press line to Mexico. PAR1 at 2, 19, 45. The Argos

---

[2] Oxford electronically filed its Form 10-K on June 20, 2000 with the United States Securities and Exchange Commission. Pls.' First Mot. at 19 n.4. Form 10-K is "the annual report that most reporting companies file with the Commission. It provides a comprehensive overview of the registrant's business." Descriptions of SEC Forms at http://www.sec.gov/info/edgar/forms.htm (last modified May 29, 2001).

[3] PAR1 and CAR1 refer to the initial public and confidential administrative records filed with the court on August 3, 2001. PAR2 and CAR2 refer to the supplemental public and confidential records, filed on October 23, 2001. PAR3 and CAR 3 refer to the supplemental public and confidential records, filed on November 6, 2002.

[4] The Argos facility's primary customer was [                                    ] ("primary customer"), which purchased over [      ] percent of the items produced at the Argos facility, including, [
                                                    ]. CAR1 at 10, 16, CAR3 at 8.

facility was engaged in the production of various types of automobile and truck parts.

On December 4, 2000, Plaintiffs requested certification for NAFTA-TAA benefits through the Indiana Department of Workforce Development ("state agency").[5]  NAFTA-TAA benefits, which are available to eligible workers, include "employment services, appropriate training, job search and relocation allowances, and income support payments."  See Former Employees of Chevron Prods. Co. v. United States Sec'y of Labor, No. 00-08-00409, Slip Op. 03-96 at 3 n.2 (July 28, 2003) (citing 19 U.S.C. § 2331(d); Statement of Administrative Action Accompanying NAFTA Implementation Act, H.R. Doc. No. 103–159, vol 1 at 673–674 (1993)). Plaintiffs sought certification under 19 U.S.C. § 2331, which states in relevant part:

> A group of workers . . . shall be certified to be eligible to apply for adjustment assistance under this subpart . . . if the Secretary determines that a significant number or proportion of workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated, and either –
> (A) that –
>> (I) the sales or production, or both, of such firm or subdivision have decreased absolutely,
>> (ii) imports from Mexico or Canada of like or directly competitive with articles produced by such firm or subdivision have increased, and
>> (iii) the increase in imports under clause (ii) contributed importantly to such workers separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or
> (B) *that there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of articles like or directly competitive*

---

[5] To qualify for NAFTA-TAA benefits, a group of workers must file a petition for certification of eligibility with the appropriate state labor authority.  After 10 days, the state authority forwards its preliminary findings and recommendation to Labor, which conducts an investigation and reaches a final determination on the petition.  19 U.S.C. § 2331(b)–(c)) (2000).

*with articles which are produced by the firm or subdivision.* [6]

19 U.S.C. § 2331 (emphasis added). In their petition, Plaintiffs alleged that their job losses were

due to a shift in production to Mexico and loss of sales to customers who were importing

products from Mexico. PAR1 at 2. Plaintiffs further specified that articles affected by the shift

in production included the "'180 inch Automated Press Line' for 'car side panels.'" Id.

On December 21, 2000, the state agency conducted a preliminary investigation into

Plaintiffs' petition and submitted its findings to Labor for review and final determination.[7] On

February 20, 2001, Labor determined that Plaintiffs produced "automotive side panels" and

denied them NAFTA-TAA certification of eligibility, concluding that layoffs were attributable

not to a shift in production from the Argos facility to Mexico, but instead to "the customer's

decision to take back the production of side panels . . . at the customer['s] U.S. plants." PAR1 at

19; Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance

and NAFTA Transitional Adjustment Assistance, 66 Fed. Reg. 10,916, 10,917 (Dep't Labor

2001). In addition to the state agency's findings, Labor's investigation was based on a letter

from and two telephone conversations with Oxford's representatives.[8]

---

[6] Congress recently repealed 19 U.S.C. § 2331, consolidating the NAFTA-TAA and the Trade Act of 1974 ("TAA") into the Trade Act of 2002. See Pub. L. No. 107–210, § 123, 116 Stat. 933, 944 (2002). Because Plaintiffs' petition precedes November 4, 2002, the effective date of the revised statute, the earlier statute applies here. Id.

[7] The state agency [

]. CAR1 at 10.

[8] The letter explained that [

].

CAR1 at 15. One telephone call [

]. Another call [

In response to denial of their petition, Plaintiffs asked Labor to reconsider its decision. In support of their request for reconsideration, Plaintiffs attached an Oxford Appropriation Request Form, which showed Argos' request for $60,000 to reassemble an 180-inch line "for transfer to another Oxford Automobile plant in Mexico." PAR1 at 48. On May 9, 2001, Labor denied Plaintiffs' request for administrative reconsideration, because "some of the machinery was sent to Mexico, [but] . . . it was not being used." Notice of Negative Determination Regarding Application for Reconsideration, 66 Fed. Reg. 23,732 (Dep't Labor 2001).

On June 13, 2001, appearing *pro se* before this court, Plaintiffs sought judicial review of Labor's negative determinations. On August 28, 2001, the court granted Labor's consent motion for a voluntary remand. See Former Employees of Oxford Automotive v. Dep't of Labor, No. 01-00453 (Ct. Int'l Trade Aug. 22, 2001). Labor's remand investigation consisted of sending an email to Oxford to determine whether it had imported side panels from Mexico or Canada. See Notice of Negative Determination on Reconsideration on Remand; PAR2 at 4–6. Oxford responded negatively and on October 19, 2001, Labor again denied Plaintiffs' petition. Id.

In March 2002, Plaintiffs were appointed counsel, and on June 28, 2002, they contested Labor's negative determination and the court again granted Labor a voluntary remand. See Former Employees of Oxford Automotive, No. 01-00453 (Ct. Int'l Trade Aug. 20, 2002). On November 22, 2002, Labor affirmed its negative determination of Plaintiffs' eligibility to apply for NAFTA-TAA benefits, explaining that "[a]lthough some of the machinery from the Argos plant had been moved to Mexico . . . [it] was idle. The layoffs at the plant were attributable to the customer's decision to take back the production of the side panels." Second Remand

]. CAR1 at 16, 17.

Determination.  Labor based its decision on information it received from Oxford, including a list of products sold to Argos facility's primary customer.  Labor also obtained verbal confirmation from the primary customer that all products it previously purchased from the Argos facility were subsequently purchased from other domestic Oxford facilities.  Id.  Finally, Oxford informed Labor that the 180-inch press line and two other major presses (10 presses total and one blanking press), that were transferred to Mexico, were never been put into production.  Id.

## DISCUSSION

### I.  A Remand is Necessary

In a NAFTA-TAA case, the court "for good cause shown, may remand the case to [Labor] to take further evidence."  19 U.S.C. § 2395(b).  In this case, Labor's determination denying Plaintiffs NAFTA-TAA eligibility warrants a remand because:  (1) Labor failed to comply with the applicable statute; and (2) the administrative record does not include relevant evidence submitted by Plaintiffs.

### A.  19 U.S.C. § 2231(a)(1)

Under 19 U.S.C. § 2231(a)(1), for workers to be certified as eligible for NAFTA-TAA benefits, Labor must determine that there was either:  (A) an increase in imports from Mexico or Canada which contributed to workers separation; or (B) "a shift in production by such workers' firm or subdivision to Mexico or Canada of articles like or directly competitive with articles which are produced by the firm or subdivision."  19 U.S.C. § 2231(a)(1)(A)–(B).   At issue here is subsection (B).  In its Second Remand Determination and Response ("Labor Resp."), Labor asserted that Plaintiffs failed to satisfy the requirements under 19 U.S.C. § 2231(a)(1)(A) or (B).  Plaintiffs have made it clear, however, that subsection (A) is not applicable; they challenge only Labor's ruling regarding subsection (B)—whether there was a "shift in production" to Mexico.

Pls.' Second Mot. for J. on Agency R. at 13–14 ("Pls.' Second Mot."). Labor's lengthy

arguments regarding 19 U.S.C. § 2331(a)(1)(A) are therefore not relevant in this case.[9]

Furthermore, Labor's determination that Plaintiffs are ineligible to apply for NAFTA-TAA

benefits under 19 U.S.C. § 2231(a)(1)(B) is not supported by substantial evidence and not in

accordance with the law.

### 1. "Like or directly competitive" articles

The statute requires Labor to determine whether articles produced in Mexico are "like or

directly competitive" with articles formerly produced by plaintiffs at U.S. facilities. 19 U.S.C. §

2231(a)(1)(B). Rather than applying the "like or directly competitive" standard here, however,

Labor incorrectly focused on "product scope." Its findings are therefore inconsistent with the

law. See Former Employees of Gen. Elec. Corp. v. U.S. Dep't of Labor, 14 CIT 608, 611 (1990)

(noting that an agency's rulings made on the basis of factual findings must be "in accordance

with the statute") (quoting Int'l Union v. Marshall, 584 F.2d 390, 396 n.26); see also Abbott v.

Donovan, 6 CIT 92, 100, 570 F. Supp. 41, 49 (1983) (noting that "the court will reject the

agency's interpretation or application of a statute when it is inconsistent with the legislative

purpose of the statute or frustrates Congress' intent"). On remand, Labor must make its

determination based on the statute. Labor must first accurately identify the articles produced by

Plaintiffs at the Argos facility, and then determine whether Oxford's facilities in Mexico

---

[9] The court reminds Labor that if Plaintiffs meet only the requirements under subsection (B), they are eligible for certification under the statute. See Former Employees of Rohm & Haas Co. v. Chao, 246 F. Supp. 2d 1339, 1348 (Ct. Int'l Trade 2003) (noting that under the statute, "a shift in production [to Mexico or Canada] is ipso facto sufficient to confer eligibility for NAFTA-TAA . . . [and does not require] . . . a causal nexus between increased imports of like articles on the one hand, and worker separations and a decline in the domestic firm's sales or production (as manifested by the shift abroad) on the other").

produced "like or directly competitive" articles.

First, Labor must accurately identify the articles produced by Plaintiffs at the Argos facility. In its Second Remand Determination, Labor found that Plaintiffs produced "automotive side panels."[10] But in making this determination, Labor failed to consider evidence in the administrative record regarding the automobile parts production process. In order to accurately identify the articles produced by Plaintiffs at the Argos facility, Labor must have an understanding of this industry. See Gropper v. Donovan, 6 CIT 103, 104, 569 F. Supp. 883, 884 (1983) (reviewing textile manufacturing process to affirm that knit fabric garments are not "like or directly competitive" with finished fabric); United Rubber, etc. v. Donovan, 652 F.2d 702, 704 (7th Cir. 1981) (examining assembly of and uses for rubber and metal components to determine whether imported mounts are "like or directly competitive" with domestic bushings); United Shoe Workers of Am. v. Bedell, 506 F.2d 174, 186–87 (D.C. Cir. 1974) (examining stage of processing to determine shoe components are not "like or directly competitive" with shoes).

Plaintiffs' claim involves the transfer of an "180-inch automated press line" to Mexico. PAR1 at 2. Labor should therefore investigate how this press line operates. Plaintiffs' exhibit A describes the world's largest hydraulic tandem press line, stating that it "will produce complete body sides for automobiles and pickups for various customers."[11] It is clear from this

---

[10] Although Labor claimed that it focused on "automotive side panels," its investigation actually narrowed further to [                                        ]. CAR1 at 37, 38.

[11] The administrative record also includes information regarding how the press lines at the Argos facility operated. [

].

CAR3 at 7.

information that press lines are designed to produce many different kinds of parts, for various

vehicles, and to adapt to new models as they are introduced.[12]  It is therefore likely that workers

on a press line could be involved in the production of a variety of parts for different car models.[13]

On remand, in order to accurately determine the articles produced by Plaintiffs at the Argos

facility, Labor should examine how the 180-inch press line functioned and determine the variety

of articles it produced.

Second, after identifying the articles produced by Plaintiffs at the Argos facility, the

statute requires Labor to determine whether they are "like or directly competitive" with those

produced in Mexico.  19 U.S.C. § 2331(a)(1)(B).  Labor failed, however, to even inquire into the

articles Oxford produced in Mexico, and instead relied erroneously on unverified statements by

Oxford that the press lines transferred there were never used.[14]  On remand, in investigating

---

[12] Labor conceded at oral argument that in the automobile industry, models change every year.  By narrowing the articles produced by Plaintiffs at the Argos facility down to a specific automobile part and model, therefore, Labor essentially precluded the possibility of identifying a "like or directly competitive" article produced in Mexico.  See discussion infra.

[13] Information in the record states that the Argos facility produced [          ] different automobile parts.  CAR3 at 8.

[14] Labor's reliance on these statements is erroneous because Oxford's statements do not address the issues Labor was required by the statute to investigate.  See Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1982) (noting that "an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider").  Even if the information regarding idle press lines was relevant, however, Labor erred by failing to verify the statements that seemed at odds with Oxford's Form 10-K.  See Former Employees of Barry Callebaut v. Herman, 177 F. Supp. 2d 1304, 1313 (Ct. Int'l Trade 2001) (ordering Labor to verify sworn statements from the employer in the face of contradictory evidence); Former Employees of Kleinert's, Inc. v. Herman, 23 CIT 647, 655, 74 F. Supp. 2d 1280, 1288 (1999) (finding Labor should not have relied on unverified company statements when factual discrepancies exist in record); Former Employees of Swiss Indus. Abrasives v. United States, 17 CIT 945, 949, 830 F. Supp. 637, 641 (1993) (finding Labor erred by relying exclusively on company's unsubstantiated statement that imports were not in competition with domestic products).

whether the articles produced in Mexico are "like or directly competitive" with those produced

by Plaintiffs at the Argos facility, Labor must follow TAA regulations.[15]

Pursuant to TAA regulations, "like articles" are defined as "those which are substantially

identical in inherent or intrinsic characteristics (i.e., materials from which the articles are made,

appearance, quality, texture, etc.);" and "directly competitive articles" are "those which, although

not substantially identical in their inherent or intrinsic characteristics, are substantially equivalent

for commercial purposes (i.e., adapted to the same uses and essentially interchangeable

therefor)." 29 C.F.R. § 90.2 (2002). In addition, under case law governing TAA cases, "it is

well established that an imported article is 'like or directly competitive' with a domestic product

if it is 'interchangeable with or substitutable for' the article under investigation." Int'l Bhd. of

Elec. Workers, 10 CIT 524, 527, 642 F. Supp. 1183, 1186 (1986). See also Bedell, 506 F.2d at

185 (noting that the terms "like" and "directly competitive" are not synonymous or explanatory

of one another and that "many products can be directly competitive without having identical or

nearly identical physical characteristics").

As discussed above, the Argos facility's press lines had the capacity to produce various

automobile parts, including "'car side panels' . . . [and car] tunnel[s]."[16] PAR1 at 2. And,

Oxford's Mexico facility was producing "the door, hood, and underbody assemblies for a new

---

[15] Labor conceded at oral argument that although it has not issued regulations specifically interpreting NAFTA-TAA, TAA regulations apply here. Similarly, in Former Employees of Carhartt, Inc. v. Chao, No. 99-12-00734, Slip Op. 01-71 at 9 n.5 (Ct. Int'l Trade June 13, 2001), the court noted that "in its interpretation of NAFTA-TAA, [it] is guided, where appropriate, by the TAA regulations."

[16] The tunnel is the underbody of the automobile, made up of approximately 13 different sections. Pls.' Second Mot. at 20.

[customer] program."[17] Form 10-K at 3, 15. Under the statute, therefore, Labor must determine whether car side panels and tunnels are "like or directly competitive" with car doors and underbodies. 19 U.S.C. § 2231(a)(1)(B). Moreover, pursuant to TAA regulations, Labor must widen its focus from "automotive side panels" to encompass the variety of articles produced by Plaintiffs at the Argos facility that may be "substantially identical in inherent or intrinsic characteristics" or "adapted to the same uses" as the products produced by Oxford in Mexico. 29 C.F.R. § 90.2.

### 2. "Shift in production by such workers' firm" to Mexico

The statute also requires Labor to determine whether there has been a "shift in production by such workers' firm or subdivision to Mexico" of "like or directly competitive" articles. 19 U.S.C. § 2331(a)(1)(B) (emphasis added). Because Labor focused here on the primary customer's shift of production within the United States, rather than properly investigating whether Oxford shifted production of "like or directly competitive" articles to its Mexico facility, its findings are inconsistent with the statute. Labor itself noted that "any shift in production is required to have been made by Oxford Automotive or its subdivision." Labor Resp. at 25. Moreover, Labor's analysis is inconsistent with its own precedents. In a recent NAFTA-TAA case, Labor denied workers reconsideration of a negative determination because it was based on the "allegation that 'a major customer . . . switch[ed its] purchases . . . from the subject firm in favor of producing the products at the customer's affiliated location in Mexico.'" Fernandez v.

---

[17] Labor argues that the new program referenced in Oxford's Form 10-K "suggests that the articles referred to relate to vehicles not even in existence when the Argos plant was in operation" and therefore cannot be "like or directly competitive." Labor Resp. at 27. The court disagrees, as the term "like or directly competitive" does not mean exact. Bedell, 506 F.2d at 180–81.

Chao, No. 02-00183, Slip Op. 03-123 (Ct. Int'l Trade Sept. 17, 2003) (quoting Notice of

Negative Determination Regarding Application for Reconsideration, 67 Fed. Reg. 35,157 (Dep't

Labor 2002)).  Thus, in previous NAFTA-TAA cases, a shift in production by a customer of the

workers' firm was found to be insufficient to constitute a "shift in production by such workers'

firm or subdivision."  19 U.S.C. § 2331(a)(1)(B).  Labor's focus here on the primary customer's

shift in production of automotive side panels is other than its settled position.  Because Labor's

findings are not in accordance with the statute, and because Labor failed to "follow its existing

precedents or provide a reasonable explanation for its deviation or noncompliance," a remand is

necessary.  W. Conference of Teamsters v. Brock, 13 CIT 169, 181, 709 F. Supp. 1159, 1169

(1989) (quoting ILWU Local 142 v. Donovan, 9 CIT 620, 625 (1985)).

**B.  Extra-Record Evidence**

Plaintiffs contend that exhibits attached to their motions, although "extra-record

evidence, . . . clearly demonstrate[] that [Labor's] investigation of Plaintiffs' petition has been

inadequate and has ignored factors relevant to [its] determination."  Pl. Reply at 7.  Plaintiffs

therefore ask the court to consider the documents.  Labor, on the other hand, argues that because

it "did not consider that information . . . [nor] include those documents in its second remand

supplemental record," the court should disregard Plaintiffs' exhibits.  Labor Resp. at 8.  Labor

contends that even if the exhibits were considered, the "non-record evidence . . . does not

conclusively demonstrate" that Plaintiffs are eligible for certification.  Id. at 25–26.  In Former

Employees of Tyco Elecs. v. United States Dep't of Labor, 264 F. Supp. 2d 1322, 1330 (Ct. Int'l

Trade 2003), the court held that "Labor's rejection of . . . information voluntarily submitted by

the Plaintiffs was a result of Labor's arbitrary and capricious treatment of [the] . . .

investigation." Similarly here, Labor's failure to examine Plaintiffs' relevant submissions and offer any satisfactory explanation for its actions renders its findings arbitrary and capricious. See Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962).

On June 28, 2002, Plaintiffs' filed their first motion and exhibits A, B and C with the court.[18] Labor was therefore aware of these documents prior to taking a voluntary remand and conducting further investigation.[19] See Former Employees of Oxford Automotive, No. 01-00453 (Ct. Int'l Trade Aug. 20, 2002) (granting second voluntary remand). During its remand investigation, Labor considered additional evidence from Oxford and its primary customer, which it included in a supplemental administrative record. At the same time, however, Labor refused to consider Plaintiffs' exhibits. It is unfair for Labor to consider submissions from one party while ignoring those from another. Furthermore, "because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, [Labor] is obliged to conduct [its] investigation with the utmost regard for the interests of the petitioning workers." Stidham v. Dep't of Labor, 11 CIT 548, 551, 669 F. Supp. 432, 435 (1987) (citing Abbott v. Donovan, 7 CIT 323, 327–28, 588 F. Supp. 1438, 1442 (1984)). By ignoring Plaintiffs' exhibits here, Labor failed to fully "investigate whether [Plaintiffs] are members of a group which Congress intended to benefit from the [NAFTA-TAA] legislation," and a remand is necessary. Former Employees of Barry Callebaut v. Herman, 240 F. Supp. 2d 1214, 1228 (Ct.

---

[18] Exhibits C, D and E were attached to Plaintiffs second motion, filed on February 4, 2003 after the second voluntary remand. Labor should review all exhibits on the remand ordered here.

[19] This was in fact the second voluntary remand and fourth opportunity for Labor to investigate Plaintiffs' request.

Int'l Trade 2002).

Although it may be true that Plaintiffs' exhibits may not "conclusively demonstrate" that Plaintiffs meet the statutory qualifications for NAFTA-TAA eligibility, the documents are relevant to Labor's investigation and warrant further analysis. Although a court cannot substitute its judgment for that of an agency, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Former Employees of Alcatel Telecomms. Cable v. Herman, No. 98-03-00540, Slip Op. 00-88 at 7 (Ct. Int'l Trade July 27, 2000) (quoting State Farm Mut. Auto. Ins., 463 U.S. at 43). See also Former Employees of Pittsburgh Logistics Sys., Inc. v. United States Sec'y of Labor, No. 02-00387, Slip Op. 03-21 at 11 (Ct. Int'l Trade Feb. 28, 2003) (finding that "[t]he developed record must evince substantial evidence to confirm or refute relevant issues encountered during the investigation"); Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (noting extra-record evidence may be considered by the court "when the agency failed to consider factors which are relevant to its final decision"). Here, Plaintiffs' exhibits include information about press lines in the automotive industry and facts about Oxford's Mexico facility. As discussed above, this information is relevant to whether Plaintiffs are eligible to be certified for NAFTA-TAA benefits and must be examined by Labor on remand.

## II. Certification is Denied

Plaintiffs argue that, "based on substantial evidence in the administrative record . . . along with the fact that [Labor] has already investigated plaintiffs petition four times," the court should certify Plaintiffs as eligible for NAFTA-TAA benefits. Pls.' Second Mot. at 22. Although "[o]rdering [Labor] to certify the Plaintiffs' claims is within the court's discretion," an additional

remand is necessary here to fully develop the record before the court. <u>Former Employees of Barry Callebaut</u>, 240 F. Supp. 2d at 1228. Labor should nonetheless be aware that if it does "not perform a competent . . . investigation upon remand, the court will not remand for [an additional] investigation." <u>Former Employees of Tyco Elec.</u>, 264 F. Supp. 2d at 1332 (quoting <u>Former Employees of Barry Callebaut</u>, 177 F. Supp. 2d at 1312).

## CONCLUSION

Accordingly, Labor's <u>Second Remand Determination</u> is remanded for the purpose of reconsidering Plaintiffs eligibility for certification of NAFTA-TAA benefits. Labor's findings must be in accordance with 19 U.S.C. § 2331(a)(1)(B) and must consider all relevant evidence. Remand results must be reported within forty-five days of this opinion.

_____

Jane A. Restani
JUDGE

Dated:  New York, New York

This 2nd day of October, 2003